16cv23651-JEM

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

In the matter:

SYBEL W. LEE, et. al
602 N.W 100TH STREET
MIAMI, FL 33150
(305)754-5073

MARY MCMINN, et. al
601 NW 99TH STREET
MIAMI, FL 33150
(305)754-0126

NATHANIEL WILLIAMS, et. al
600 N.W. 116TH STREET
MIAMI, FL 33150
(786) 306-4609
     Plaintiff(s)

V.

HARVEY RUVIN, MIAMI-DADE COUNTY
CLERK OF THE BOARD OF
MIAMI-DADE COUNTY COMMISSIONERS, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 17-202
Miami, Florida 33128
(305) 375-4831

CARLOS A. GIMENEZ
MIAMI-DADE COUNTY MAYOR, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 2910
Miami, Florida 33128
(305) 375-5071

BARBARA J. JORDAN
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 1, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5694

DORRIN ROLLE
FORMER MIAMI-DADE COUNTY COMMISSIONER
DISTRICT 2, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128

CASE NO.

COMPLAINT



FILED by _____ D.C.

AUG 2 5 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

1

JEAN MONESTIME
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 2, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4833

BARBARA SHULER-CAREY
FORMER MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
401 West Atlantic Avenue, Suite 9
Delray Beach, FL 33444
561-265-0622

STATE SENATOR OSCAR BRAYNON II
FORMER AIDE TO BARBARA SHULER-CAREY
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
18579 N.W. 27TH Avenue
Miami, FL 33056
(786) 326-3828

AUDREY M. EDMUNSON
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5393

SALLY A. HEYMAN
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 4, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5128

BRUNO BARREIRO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 5, et. al.
1454 SW 1st Street, Ste 130
Miami, Florida 33135
(305)643-8525

REBECCA SOSA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 6, et. al.

2

Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5696

XAVIER SUAREZ
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 7, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5680

DANIELLA LEVINE CAVA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 8, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5281

DENNIS MOSS
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 9, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4832

JAVIER D. SOUTO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 10, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4835

JOE MARTINEZ
FORMER MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 11, et. al.
The Reyes Law Firm, P.A.
1 Alhambra Plaza, Suite 1130
Coral Gables, Florida 33134
(786) 476-9907

JUAN C. ZAPATA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 11, et. al.

3

Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5511

JOSE "PEPE" DIAZ
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 12, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4343

ESTEBAN BOVO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 13, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4831

CLINTON FORBES, (STE 230)
FORMER MANAGER,
METRO PLANNING ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

ALICE N. BRAVO, P.E.
DISTRICT 6 DIRECTOR OF TRANSPORTATION
SYSTEMS DEVELOPMENT, et. al.
701 NW 1st Court, Suite 1700,
Miami, FL 33136
(786) 469-5675

GARY DONN, P.E.
DISTRICT 6, PROJECT MANAGER
FLORIDA DEPARTMENT OF TRANSPORTATION
3845 N.W. 25th Street
MIAMI, FL 33142
(800) 435-2368

GUSTAVO "GUS" FELIX PEGO, P.E.
DISTRICT 6, SECRETARY
FLORIDA DEPARTMENT OF TRANSPORTATION
3845 N.W. 25th Street
MIAMI, FL 33142
(800) 435-2368

4

GOVERNOR RICK SCOTT
STATE OF FLORIDA
THE CAPITOL, et. al.
400 S. Monroe Street
Tallahassee, FL 32399-0001
(850) 488-7146

LT. GOVERNOR LOPEZ-CANTERA
STATE OF FLORIDA
THE CAPITOL, et. al.
400 S. Monroe Street
Tallahassee, FL 32399-0001
(850) 488-7146

AILEEN BOUCIE, EXECUTIVE DIRECTOR
MIAMI-DADE METROPOLITAN PLANNING
ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

JOSE LUIS-MESA, DIRECTOR
MIAMI-DADE METROPOLITAN PLANNING
ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

GEORGE M. BURGESS
FORMER COUNTY MANAGER
MIAMI-DADE COUNTY GOVERNMENT, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128

ABIGAIL PRICE-WILLIAMS
COUNTY ATTORNEY
MIAMI-DADE COUNTY GOVERNMENT, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5151

JENNIFER GLAZER-MOON
DIRECTOR, OFFICE OF STRATEGIC BUSINESS MANAGEMENT
MIAMI-DADE COUNTY GOVERNMENT, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128

5

(305) 375-5143

JACK KARDYS, DIRECTOR
MIAMI-DADE COUNTY PARKS AND RECREATIONAL
DEPT. et. al.
275 NW 2nd St,
Miami, FL 33128
(305) 755-7800

VIVIAN DONNELL RODRIQUEZ, DIRECTOR
MIAMI-DADE COUNTY PARKS AND RECREATIONAL
DEPT. et. al.
275 NW 2nd St,
Miami, FL 33128
(305) 379-8087

      Defendant(s)

_____/

## JURISDICTION

This court have original jurisdiction pursuant to U.S. Const. Article 3, Section 2, U.S. Const. 14th Amendment, 15 U.S. Code §2072, 18 U.S. Code §1964, 28 U.S. Code §1331 and 1332, 31 U.S. Code §3729, 42 U.S. Code §1981, 1991 and 1883.

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States and shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## COMPLAINT

### QUESTION

Can the Miami-Dade County Board of County Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, the Miami-Dade Parks and Recreation Department, the Metropolitan Planning Board (MPO) and the Florida Department of Transportation (FDOT) be sued for breaching an agreement, word and/or promise made to senior citizens or a protected class of citizens in violations of the Civil Rights Act of 1981, 1991, 1883 and Equal Protection Clause to use Federal Highway Administration (FHWA) and Florida Department of Transportation (FDOT) when the funds

6

were approved by the FDOT and The Dade County Commissioner , Dade Parks and Recreation and  The

MPO Board in the year 0f 2002. The said funds were to be distributed to the said homeowners' in 2003;

by the Mr. Oscar Brannon III, at the time was Former Commission Dr. Barbara Carey-Schuler, assistant.

This arrangement was never fulfilled, as of this present time, 2016 to these said senior citizens

homeowners. These Plaintiff's include : Ms. Sybel W. Lee, residing at 602 NW 100th Street, Miami, FL

33150, a Ms. Mary McMinn residing at 601 NW 99th Street, Miami, FL 33150 and a Mr. Nathaniel

Williams residing at 600 NW 116th Street, Miami, FL 33150 who all reside in unincorporated Miami-

Dade County and who are directly affected by the MPO/FDOT I-95 Noise Abatement Wall Retrofit and

Safety Improvements project that have placed them in and still remain in these very dangerous, hazardous

and unsafe living conditions, as of 2016. This is an on-going issue since 1992, the beginning of this

project.

The broken promise and agreement never came and the Plaintiffs did not receive the equal

protections under the laws when their homes were never honored in the original agreement by the said

partiers as stated earlier. Miami-Dade County whereas the homes were not demolished and the funds that

were approved by state and federal government did not build a Linear Park in the Pinewood community

as designated for that particular purpose or purposes of said contract?  Instead the funds were redirected

and created said contract in another district?

U.S. Constitution XIV Amendment

Section 1.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are

citizens of the United States and of the state wherein they reside. No state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States; nor shall any state

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within

its jurisdiction the equal protection of the laws.

7

The Equal Protection Clause is part of the Fourteenth Amendment to the United States Constitution. The clause, which took effect in 1868, provides that no state shall deny to any person within its jurisdiction "the equal protection of the laws".

42 U.S. Code § 1981 - Equal rights under the law

(a) Statement of equal rights:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other,

(b) For purposes of this section:

The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship,

(c) Protection against impairment:

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.) "Make and enforce contracts" defined,

Fla. Stat. Ch. 125.15, the law provides that the county shall sue and be sued in the name of the county of which they are commissioners.  A change in the persons composing the board of county commissioners shall not abate the suit, but it shall proceed as if such change had not taken place.  Fla. Stat. Ch. 125.15 (2016).

A MPO/FDOT I-95 Noise Abatement Wall Retrofit and Safety Improvements project funds were approved by the Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, the Florida Department of Transportation (FDOT), the Federal Highway Administration (FHWA) and Metropolitan Planning Organization (MPO) in 2000 to reduce the amount of traffic accident on a major I-95 heavily travel interstate highway known as I-95. The distance

8

of this type of said highway, being heavily travel should be 500 feet from any community. This is a heavily traveled Interstate 95 (I-95) and is the main Interstate Highway on the East Coast of the United States, running largely parallel to the Atlantic Ocean and U.S. Highway 1, serving areas between Florida and New England inclusive. In general, I-95 serves metropolitan areas such as Boston, New York, Philadelphia, Baltimore, and Washington, D.C. in the Northeast and Mid-Atlantic, and Richmond, Fayetteville, Savannah, Jacksonville, and Miami in the Southeast.

The route follows a more direct inland route between Washington, D.C. and Savannah, notably bypassing the coastal metropolitan areas of Norfolk-Virginia Beach and Charleston, which requires connections through other Interstate Highways. The project was to reduce noise, pollution and the number of vehicle accidents taking place on I-95 between Northwest 97th Street to Northwest 116th Street in Miami-Dade County, which was to help reduce vehicle car accidents, loud and deafening noise pollutions air pollutions, carbon monoxide poisonous gases contaminating the air, a loss of life and endangerments to other homeowners and their families living within the "Pinewood Community." For the past 16 years the Plaintiffs have experienced a great number of problems caused by the plaguing of accidents and vibrations to the structures of the Plaintiffs homes occurring from the heavy traffic travelling on interstate highway I-95 to their homes. In addition, there are high voltage cables and power-lines that expose the surrounding homes to the elements of cancer causing agents and other problems. By the county not honoring the said agreed contract the homes as agreed or promised, they also exposes the Plaintiffs to the radiation of the power-lines hanging over neighboring trees placing the Plaintiffs' health, safety and lives at risks continuously.

"The Pinewood Community" has had a great number of vehicle accidents that resulted by the speeding of vehicles travelling on interstate highway I-95 crashing through fences and landing on property that has contributed to the possible deaths, endangerment of children and families health and safety, exposure to loud deafening noise pollutants and very high amounts of carbon monoxide poisonous gases being placed into the surrounding "Pinewood Community air?"

What is a Breach of agreement and/or promise?

9

A contract is a legally enforceable promise. The promise is usually for the purchase of an item or job rendered.  If a party breaks a promise, the other party may be able to sue for breach of agreement and/or promise. A breach of contract or promise occurs when a contract and/or promise is broken. A break of promise is ground for a lawsuit against a man who reneges on an agreement.

(a)PERSONS INJURED; COSTS; AMOUNT IN CONTROVERSY

Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 2060(f) of this title) and reasonable expert witnesses' fees: Provided, That the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and cost, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

## FACT STATEMENT

In 1992, a car careened off of I-95 into the yard of Ms. Sybel W. Lee and that was the beginning of her nightmare. Ms. Lee representing herself and her neighbors a Ms. Mary McMinn and a Mr. Nathaniel Williams started complaining to the Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners and Metropolitan Planning Organization (MPO) about the dangers to their lives and property due to car accident vehicles running off I-95 into their front yards which bring about their deaths, destruction to their homes, adding to the loudness and deafening noise to their ears and the adding of high volume of carbon monoxide poisonous gases and air pollutants to the air; that seriously brought harm and unavoidable injuries to the Plaintiffs and other neighbors.

Ms. Lee is also a founding member of Neighborhoods- In- Action known throughout Miami-Dade County as (NIA).  In a presentation to the board Ms. Lee explained to Miami-Dade County

Metropolitan Planning Board (MPO) "if you drive along I-95, that the house without windows right on the freeway is her neighbor. Ms. Mary Ann McMinn is the one without kitchen windows, she was forced to board up that part of her home in a futile effort to keep out the noise and pollution from the I-95 interstate." "There have been 18-wheeler trucks driving on I-95 that have caused a great of the noise pollution and have put a lot of carbon monoxide into the air endangering the neighborhood's health and safety." The Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, FDOT District 6 and the Metropolitan Planning Organization Board referred to as (MPO) are the authorizing authorities responsible for prioritizing transportation projects within the region for the Florida Department of Transportation (FDOT). See 1992 Miami Herald Article Exhibit A.

In the year 2002, Ms. Sybel W. Lee, 602 NW 100th Street, Miami, FL 33150, a Ms. Mary McMinn 601 NW 99th Street, Miami, FL 33150 and Mr. Nathaniel Williams 600 NW 116th Street, Miami, FL 33150 met in the office of Miami-Dade County Commissioner Barbara Shuler-Carey and her assistant Oscar Brannon II to discuss the agreement or promise made by the county to purchase their homes and relocate them from the dangerous area. At the meeting Miami-Dade County Commissioner Dr. Barbara Shuler-Carey told the Plaintiffs that they county received the funds for the purchase and they she promised that the Miami-Dade County Board of Commissioners and the Florida Department of Transportation, (FDOT) District 6 office, will be purchasing the homes directly affected by the dangers, hazards and unsafe elements surrounding the great number of vehicle accidents taking place on I-95.

Dr. Barbara Shuler-Carey promised that the county would fulfill its promise and purchase the homes per a grant approved by FDOT and FHWA and received by the Metropolitan Planning Organization Board (MPO), the Miami-Dade County Clerk of the Board of County Commissioners, the Florida Department of Transportation (FDOT) and the Miami-Dade County Board of Commissioners who agreed and/or promised to purchase their property, demolish their homes and build a Linear Park with earmarked state and federal FDOT/FHWA funds approved to be used within the Pinewood community beginning at Northwest 97th Street to Northwest 116th Street along with installing an I-95 Noise Abatement Wall Retrofit and Safety Improvements project.

11

The Plaintiffs were unaware at the time what had happened to the $75 million dollars allocated and approved by Florida Department of Transportation (FDOT), the Federal Highway Administration (FHWA) that was received by the Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners and Metropolitan Planning Organization (MPO) that had been confirmed as received in 2002/3 by Miami-Dade County Commissioner Dr. Barbara Shuler-Carey.  Miami-Dade County Commissioner - Dr. Barbara Shuler-Carey admitted to the Plaintiffs and Dr. Phillip Wright who was a witness that "Miami-Dade County Board of Commissioners has the money and she requested that they get with her assistant Oscar Brannon III and make arrangements for the distribution of these funds."  Senator Oscar Brannon III is now a Florida State Senator from District 36 in Miami Dade County.

At present the county's has not kept its agreement and/or promise to the Plaintiffs beginning in 2000 to 2016 whereas the Plaintiffs feel that a lawsuit should be filed against Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, the Metropolitan Planning Organization Board (MPO) and the Florida Department of Transportation (FDOT); would force them to make good on the county's promises dealing with releasing and allocations of the federal earmarked funds approved by the Florida Department of Transportation, (FDOT) District 6 office and the Federal Highway Administration (FHWA); to purchase the homes of the Plaintiff's as agreed or promised preventing any other further dangers and unsafe conditions that can potentially avoid life threatening car accidents as mentioned by all of the Plaintiffs since 1979 to 2016.

The United States District Court for the Southern District of Florida should demand that Miami-Dade County Board of County Commissioners, the Miami-Dade Clerk of the Board of County Commissioners, the Metropolitan Planning Organization Board Members (MPO) and the Florida Department of Transportation (FDOT) District 6 offices fulfill their agreement and/or promise to purchase their homes at above today's market values, costs adjustments and expenses.

The county also promised the Plaintiffs that it would build a Miami-Dade County Park and Recreational Linear park facility to be erected in the "Pinewood Community" replacing all the homes in

12

order to serve the families living within the unincorporated Miami-Dade County; erecting the park next to the I-95 Noise Abatement Wall located between Northwest 97th Street to Northwestern 116th Street.

"A county can sue and/or be sued in the name of the county of which they are commissioners. A change in the persons composing the board of county commissioners shall not abate the suit, but it shall proceed as if such change had not taken place." The Preamble states that "We, the people of this County, in order to secure for ourselves the benefits and responsibilities of home rule, to create a metropolitan government to serve our present and future needs, and to endow our municipalities with the rights of self determination in their local affairs, do under God adopt this home rule Charter." See Miami-Dade County Home Rule Charter, Preamble and Fla. Stat. Ch. 125.15 (2016)

It is alleged that Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Miami-Dade County Parks and Recreations Department, the Metropolitan Planning Organization Board (MPO), and the Florida Department of Transportation (FDOT) District Six office have allegedly engaged in a conspiracy to defraud the federal government in making a false claim that have allowed them to use, abuse and misuse Federal Highway Administration (FHWA) and Florida Department of Transportation (FDOT) funds that were earmarked for the I-95 Linear Park project which these funds were not used by the Miami-Dade County for that Pinewood community project or for that intended purpose as promised which may be in violation of Title 31 U.S. Code 3729 - the False Claim Act. The False Claim Act holds liable all parties who conduct is in violation of the following acts:

(a) Liability for Certain Acts.—

(1) In general.—Subject to paragraph (2), any person who—

(A) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) Conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

13

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

(2)Reduced damages.—if the court finds that—

(A) the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

(B) Such person fully cooperated with any Government investigation of such violation; and

(C) at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation, the court may assess not less than 2 times the amount of damages which the Government sustains because of the act of that person.

(3) Costs of civil actions.—

14

A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

(b) Definitions.—for purposes of this section—

(1) The terms "knowing" and "knowingly"—

(A) Mean that a person, with respect to information—

(I) has actual knowledge of the information;

(ii) Acts in deliberate ignorance of the truth or falsity of the information; or

(iii) Acts in reckless disregard of the truth or falsity of the information; and

(B) Require no proof of specific intent to defraud;

(2) The term "claim"—

(A) Means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) Is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) Will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

(B) does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property;

(3) the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

15

(4) The term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

On February 21, 2009 a letter was written by Ms. Sybel W. Lee to Florida Attorney General Bob McCollum regarding the abuse and mistreatment of the Plaintiffs dealing with numerous dangerous and unsafe conditions existing with the heavy traffic vehicle accidents that gave birth to the I-95 Noise Abatement Wall expansion project. See Exhibit B, letter dated 2-21-2009 by Ms. Sybel W. Lee.

The letter written by Ms. Sybel W. Lee, Ms. Mary McMinn and Mr. Nathaniel Williams said that "enclosed are several documents, pictures and a CD of the horror which three seasoned senior citizen's Plaintiff's and taxpayers have been forced to live under and endured the dangerous conditions since 1979 to present. Plaintiffs informed Florida Attorney General Bill McCollum that "this matter had been an on-going controversy and no hands-on solution. In 2000, Dade County Commissioner's, the MPO Board, and FDOT District 6 office all agreed to buy us out, yet we are still waiting for the promise to be kept. However, there has been an I-95 Noise Mitigation Wall erected to alleviate some of the noise factors and the dangers of pollution and fatal accidents. But, we are still in danger of pollution from cars and fatal accidents occurring on this heavily traveled I-95 Interstate Highway. Ms. Lee said "we live under the fears of this situation daily, preparing for the worst, and praying that we will be out of harm's way, if it does occur. We hear the news of deadly accidents that have occurred south and north on this heavily traveled interstate highway. The Plaintiffs asked that this issue be resolved and that they be allowed to live out their golden years as senior citizens in healthy, peace and safety environment."

The breaking of the promise made by government officials overseeing the I-95 Noise Abatement Wall expansion project has cost all of the Plaintiffs some health issues, lack of social enjoyment and a great deal of financial hardships. See Exhibit C, email dated 12/15/2009 chronological list from Ms. Mary McMinn. See Miami Dade Home Rule Charter Citizen Bill of Rights November 4, 2014 Miami-Dade County Board of Commissioners and the Clerk of the Board of County Commissioners had violated this provision of the charter by knowingly giving members of the general public false information as provided; the Citizens Bill of Rights says:

16

1. This government has been created to protect the governed, not the governing. In order to provide the public with full and accurate information, to promote efficient administrative management, to make government more accountable, and to insure to all persons fair and equitable treatment, the following rights are guaranteed.

2. Convenient Access. Every person has the right to transact business with the County and the municipalities with a minimum of personal inconvenience. It shall be the duty of the Mayor and the Commission to provide, within the County's budget limitations, reasonably convenient times and places for registration and voting, for required inspections, and for transacting business with the County.

3. Truth in Government. No County or municipal official or employee shall knowingly furnish false information on any public matter, nor knowingly omit significant facts when giving requested information to members of the public.

On March 23, 2009, Florida Attorney General Bill McCollum office responded to Ms. Sybel W. Lee's letter dated 2-21-2009.  See Exhibit D, Attorney General Bill McCollum respond dated 3-23-2009.

Ms. Becky Kring wrote on Mr. McCollum's behalf to the Plaintiffs stating "by contacting the Florida Department of Transportation (FDOT) District 6 and the Miami-Dade County Commissioners, you contacted the appropriate authorities."  Ms. Kring also copied the Miami-Dade County Office of the Inspector General located at 19 W. Flagler Street, Suite 220, Miami, FL  33130.  The Offices of Inspectors General (OIG) commonly known as the "watchdog" agencies and are found at all levels of local, state and federal government.  In Miami-Dade, the OIG has oversight of over 25 county departments, including Aviation, the Seaport, Transit, Housing, Community and Economic Development, Water and Sewer, Solid Waste, Public Works and the Public Health Trust (JMH).  The Board of County Commissioners determined that the oversight of such a large and diverse government required the OIG to be independent and autonomous. It empowered the OIG to investigate and review allegations of waste, fraud, abuse and mismanagement.

17

The Miami-Dade Inspector General has authority to review past, present and proposed County and Public Health Trust programs, accounts, records, contracts, and transactions. The OIG investigates allegations of fraud, waste, abuse and misconduct amongst public officials and County employees, as well as contractors and vendors doing business with the County. To carry out this function, the OIG is empowered with the ability to require the production of documents and records in the possession and control of the County, and has the power to issue subpoenas, where necessary. The OIG can also require reports from any County official, county agency or instrumentalities regarding any matter in its jurisdiction. The OIG also has the power to report on and recommend to County government on whether a particular program, contract or transaction is financially sounded, reasonable, necessary or operationally deficient. The OIG may conduct random audits and provides general oversight of department programs and large-scale construction projects.

On July 23, 2007, former Miami-Dade County Commissioner James C. Burke at a Miami-Dade County Board of Commissioners and Metropolitan Planning Organization Meeting (MPO), presented to Chairman of the Board of County Commissioners Bruno A. Barreiro a letter from the "Life & Safety Endangered I-95 Homeowners/Citizen requesting that Mr. Burke be given the opportunity to present before BCC & MPO some important information involving the I-95 Noise Abatement Wall expansion project.

The letter stated that homeowner's were presently being exposed to potential injury or death, and that there was potential great liability to Miami-Dade County, to the state and federal government."

It also said that "we are aware that the MPO meeting have been cancelled until October and that, based upon discussions, presentation at Tuesday's BCC meeting is not feasible. However, two accidents involving large trucks have occurred in the past two months and the possibility of another accident involving a large vehicle resulting in the collapse of the I-95 wall onto the residences of the homeowners create an exigent circumstance.

Consequently, we are presenting this written request to you and the Clerk's Office, as well as requesting that the Citizen's Presentation for early September will allow these homeowners to be heard."

18

Ms. Lee once had one of her own private vehicles damaged and other private property destroyed in her front yard when vehicles involved in accidents on I-95 ended up in her front yard and placing her in danger. See Exhibit E, Life & Safety Endangered I-95 Homeowners/Citizen Presentation date 7/23/2007.

Florida Department of Transportation (FDOT) in 2002 approved and allocated approximately $75M dollars to 400M dollars to complete the Dade County Linear Park and complete the I- 95 Noise Abatement Wall Retrofit and Safety Improvements project by which the Miami-Dade County Board of Commissioners, the Miami-Dade Clerk of the Board of County Commissioners, the Metropolitan Planning Organization Board (MPO) all had received earmarked federal funds for the I-95 noise wall project from Florida Department of Transportation (FDOT) District 6 office promising to purchase homes belonging to Plaintiff's Ms. Sybel W. Lee, Ms. Mary McMinn and Mr. Nathaniel Williams. This purchase was for the purpose of reducing the excessive noise pollution, car accidents, speeding and loudness from the heavily travelled traffic on interstate highway I-95.  See U.S. Department of Transportation Federal Highway Administration, September 1980, HEV-21/8-80(20M); for sale by the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402

### FDOT Causes of Traffic Noise

The level of highway traffic noise depends on three things: (1) the volume of the traffic, (2) the speed of the traffic, and (3) the number of trucks in the flow of the traffic.  Generally, the loudness of traffic noise is increased by heavier traffic volumes, higher speeds, and greater numbers of trucks. Vehicle noise is a combination of the noises produced by the engine, exhaust, and tires. The loudness of traffic noise can also be increased by defective mufflers or other faulty equipment on vehicles. Any condition (such as a steep incline) that causes heavy laboring of motor vehicle engines will also increase traffic noise levels. In addition, there are other more complicated factors that affect the loudness of traffic noise. For example, as a person moves away from a highway, traffic noise levels are reduced by distance, terrain, vegetation, and natural and manmade obstacles. Traffic noise is not usually a serious problem for people who live more than 500 feet from heavily traveled freeways or more than 100 to 200 feet from lightly traveled roads.

19

### How Traffic Volume Affects Noise

**A**

2000 vehicles per hour

**B**

200 vehicles per hour

A sounds twice as loud as B.

4

---

### How Speed Affects Traffic Noise

**A**



55 miles per hour

**B**

15 miles per hour

A sounds twice as loud as B.

---

### How Trucks Affect Traffic Noise

**A**

One Truck

**B**



32 cars

A sounds as loud as B.


Miami-Dade County Dist. 3 Commissioners and MPO Board Member a Ms. Audrey Edmonson at a July 19, 2012 Metropolitan Planning Organization meeting read and introduced a letter written by Ms. Vivian Donnell Rodriguez who was the Director of the Miami-Dade Parks and Recreational Department to the governing body. Ms. Edmonson read item #5A3 as reported into the video tape record that pertained to project #416-510-1 written on September 25, 2006 as evidence of the misappropriation of county funds by the Parks and Recreational Department and others agencies earmarked by Florida Department of Transportation (FDOT) and the Federal Highway Administration (FHWA), whereas the Board's actions played a part in a conspiracy to defraud the federal government.

A July 19, 2012, MPO Meeting video tape shows Miami-Dade County Commissioner Audrey Edmonson reading a letter from a Ms. Vivian Donnell Rodriguez, where it said "Dear Ms. McGuire who is over the District Six Planning Office for the Florida Department of Transportation, (FDOT). Ms. Vivian Donnell Rodriguez wrote to Ms. McGuire that the purpose of this letter is to withdraw the Miami-Dade Parks and Recreations Department grant application for the I-95 Linear Park. The objective of the project was for the department to purchase seven properties adjacent to I-95 between NW 97th and 100th Street excluding the agreement to also originally included 116th Street as part of the homes being purchased and the county would be demolishing the structures on the site.

The properties were later to be developed into a 1 ½ acre linear park in a residential neighborhood in unincorporated Miami-Dade County, Ms. Rodriguez wrote that these properties are no longer for sale." Miami-Dade County Commissioner Audrey Edmonson put on the record that there was a promise and there were funds approved and granted by FDOT and Miami-Dade County to purchase the Plaintiff's

21

homes." See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on 5A3 reported at 50:08 minutes.

Miami-Dade County Commissioner Audrey Edmonson said at the 7/19/2012 MPO Board meeting that "she could not explain in the video why Ms. Vivian Donnell Rodriguez said in her letter that the homes were no longer for sale, since the county initially promised to purchase the Plaintiff's homes because of the safety factors of the I-95 Noise Abatement Wall expansion project and Linear park."

On September 14, 2006, the Miami Today reported that "Ms. Vivian Donnell Rodriguez, Director Miami-Dade Parks and Recreations was heading the largest Park and Recreational redevelopment project in the history of her department with the redevelopment of the Metro Zoo located at 12400 S.W. 152nd Street, Miami, FL 33177." Again, these earmarked federal funds were allegedly approved to purchase the Plaintiff's properties and relocate them at the county's expense. The Miami Today also reported in one of their articles dated September 14, 2006, that "voters in Miami-Dade County will be asked in November to approve a major recreational facility – a water theme park to be constructed on county owned land next to Miami Metro Zoo. The theme park is just one of several major projects of the county's Parks and Recreational Department designed as amenities for the community. Leading the department as its director since 1999 and undertaking the largest capital development program in its 75 year history is Cuba native Vivian Donnell Rodriguez, who served for 12 years as executive director of an award-winning public service venture, Miami-Dade Art of Public Places. She was interviewed by Miami Today international editor Michael Hayes." See Exhibit F, the Miami Today Article dated September 14, 2006, Vivian Donnell Rodriguez Leading County Parks Through, Largest Capital Development Project in Department History.

The Plaintiffs Ms. Sybel W. Lee was responsible for the idea for the park and for getting the monies that were to be used for the Linear Park in the Pinewood community and not by Parks and Recreations Director a Ms. Vivian Donnell Rodriguez for the redevelopment of the Miami Metro Zoo and for the renaming of the Zoological Park. Ms. Rodriguez withdrew the Pinewood community park in 2006 and used the earmarked FHWA Funds distributed for the Linear Park as approved by MPO/FDOT in un-

22

incorporated Miami-Dade County. This Miami-Dade County scheme caused a diversion of federal and state funds earmarked by FDOT and FHWA to purchase homes located between NW 97th Street to 116th Street directly affected by noise pollutants, hazardous and unsafe conditions, cancer causing radiation agents, carbon monoxide poisonous gases, vehicle car accidents and the heavy traffic of vehicles travelling on interstate highway I-95.

DISCUSSION

Did the Miami-Dade County Board of County Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, the Florida Department of Transportation, (FDOT) and Metropolitan Planning Organization (MPO) breach their agreement and/or promise with the Plaintiffs a Ms. Sybel W. Lee, 602 NW 100th Street, Miami, FL 33150, a Ms. Mary McMinn 601 NW 99th Street, Miami, FL 33150 and Mr. Nathaniel Williams 600 NW 116th Street, Miami, FL 33150, when the Miami-Dade County Board of Commissioners, the Clerk of the Board of County Commissioners, MPO and FDOT agreed and/or promised the Plaintiffs in the Pinewood community that FHWA and FDOT funds will be allocated to help them reduce the dangerous conditions of I-95 traffic exposing them to dangers which is why they agreed to purchase each of the Plaintiff's homes and then relocated them at the county's expense from the dangers in lieu of erecting the I-95 Noise Abatement Wall Retrofit and Safety Improvements project?

Did the diversion of state and federal funds by Miami-Dade County, CBCC, MPO and FDOT District 6 improvement project created fraud and deception by county that interfered with the effective operations of interstate commerce and the day to day operations of the State of Florida, FDOT, Federal Highway Administration?

Did the Miami-Dade Board of Commissioners, the Miami-Dade County Clerk of the Board of County Commissioners, the Metropolitan Planning Organization (MPO, and the Florida Department of Transportation (FDOT) committed acts of conspiracies when earmarked FHWA federal funds was misused by Miami-Dade County Commissioners, MPO and the Miami-Dade County Clerk of the Board of County Commissioners knowingly and willfully misused federal funds earmarked and approved for a

23

Linear Park project in the Pinewood community which funds were allegedly diverted by Miami-Dade County to assist with development and redevelopment of the renaming of the Miami Metro Zoo Park located in the Southwest Dade area at 12400 S.W. 152nd Street, Miami, FL 33177?

The law provides again that "the county shall sue and be sued in the name of the county of which they are commissioners. A change in the persons composing the board of county commissioners shall not abate the suit, but it shall proceed as if such change had not taken place." See Fla. Stat. Ch. 125.15 (2016). We believe that Miami-Dade County Board of Commissioners, MPO and the Miami-Dade County Clerk of the Board of Commissioners did commit fraud and deception by acquiring federal and state funds for the MPO/FDOT I-95 Noise Abatement Wall Retrofit and Safety Improvements project, purchase of their homes and with the building of a Linear Park; where the county then under a conspiracy defrauded the federal government and used the designated funds to purchase the homes between Northwest 97th Street to Northwest 116th Street and build a Miami-Dade County Parks and Recreations Linear Park in the Southwest Richmond Heights area.

Also, during the July 19, 2012 at a Miami-Dade Metropolitan Planning Organization Board meeting Mr. Zevin Auerbach a Member Municipal Representative advised the Plaintiffs that this matter smell like corruption because monies were promised by Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Metropolitan Planning Organization (MPO) and then the funds were cancelled and used unlawfully by Ms. Vivian Donnell Rodriguez Parks Department in 2006, which Mr. Auerbach said that he believes that a federal investigation should take place into the alleged corruption and misappropriation of state and federal FDOT/FHWA funds by FDOT District 6 office earmarked for the purchase and relocation of homes located between Northwest 97th Street and 116th Street. At present the Plaintiffs a Ms. Sybel W. Lee, a Ms. Mary McMinn and a Mr. Nathaniel Williams are still being directly affected by the breach of agreement and/or promise made by Miami-Dade County in 1991 and they have still been complaining that they are still living with dangerous conditions centering on a project known as MPO/FDOT I-95 Noise Abatement Wall Retrofit and Safety

Improvements project. See Miami-Dade County/MPO Meeting Video Tape dated July 19, 2012 on item #5A3 reported at 01:14:04 minutes.

CONCLUSION

Black Law Dictionary 10th Ed. Breach of Promise, Page 226, states "the violation of one's word or undertaking, especially a promise to marry under English common law; an engagement to many had the nature of a commercial contract, so if on party broke the engagement without justification, the innocent party was entitled to damages."

12A Fla. Jur. 2d Counties § 176 Page 236 (2002), "Violations of Florida Code of Ethics."

"The Florida Code of Ethics for Public Officers and Employees applies to officers and employees and imposes penalties for violations of its provisions, which are in addition to any criminal penalty or other civil penalty involved. Those penalties include, inter alia, removal from office, public censure and reprimand, and restitution of any pecuniary benefits received because of the violation committed.  See Lainhart v. Burr, 49 Fla. 315, 38, So. 711 (1905), City of Lake Worth v. First Nat. Bank in Palm Beach, 93 So. 2d 49 (Fla. 1957).

Issue: Evidence disclosed participation in a scheme by the mayor and city treasurer was not shown to have been a participant therein, however the mayor failure to perform duties imposed by city charter contributed to loss and rendered him and his surety bond liable.  City of Lake Worth v. First Nat. Bank in Palm Beach, 93 So. 2d 49 (Fla. 1957).

Id. At 52, "the court ruled that the Plaintiffs were entitled to relief against each of the defendants. City of Lake Worth v. First Nat. Bank in Palm Beach, 93 So. 2d 49 (Fla. 1957).

Did Miami Dade County Board of Commissioners, the Miami Dade County Clerk of the Board of County Commissioners, the Metropolitan Planning Organization (MPO), the Florida Department of Transportation (FDOT) and Miami-Dade County Parks and Recreations Department committed acts of a conspiracy to defraud state and federal government when applying for a grant that was to purchase seven homes in unincorporated Miami Dade County being directly affected by the expansion of MPO/FDOT I-95 Noise Abatement Wall Retrofit and Safety Improvements project.  Again, the Miami-Dade County

25

Board of Commissioners agreed and/or promised to compensate homeowners directly affected by the dangers of the MPO/FDOT project. The county agreed and/or promises to demolish the homes and put in their place a Linear Park for the surrounding area, whereas the Linear Park project was canceled by a Ms. Vivian Donnell Rodriguez, Director for Parks and Recreations on September 14, 2006.  The agreement and/or promise was initially breached by former Miami Dade County Commissioner a Dr. Barbara Shuler Carey and the entire Miami-Dade County Board of Commissioners who met with the homeowners in 2002 and she admitted in front of witnesses that included a Dr. Phillip Wright that Miami-Dade County received the monies to purchase their homes and relocated them at the county's expense.  She later instructed her assistant in that meeting a Mr. Oscar Brannon to contact the homeowners and schedule a day with them, so the funds can be distributed to a Ms. Sybel W. Lee, a Ms. Mary McMinn and a Mr. Nathaniel Williams immediately.

In Lainhart v. Burr, 49 Fla. 315, 38 So. 711 (1905), County Commissioners committed an unlawful act when tax payers funds were used for some other unspecified purpose or project. Id. at 711 "the court said that County Commissioners should be required to account for and restore to the treasury the full amount paid out by them on account of such transactions of the nature mentioned as were tainted with actual fraud or for such supplies as were not necessary and beneficial to the county or which could not lawfully have been purchased by the commissioners from other persons for the use of the county.

Id. at 715 – 716, "the court said that it was of the opinion or those acting under their authority, procured supplies from firms in which any of the commissioners or their purchasing agents were partners illegally being opposed to public policy and that it was proper to enjoin the payments of warrants issued in payment for such supplies."

12A Fla. Jur. 2d Counties §177 Page 237 (2016).

A public officer is criminally punishable for official conduct that involves corruption. See. Fla. Stat. §838.015, §838.016, §838.022 and §838.21.

12A Fla. Jur. 2d Counties §193 (2002)

26

"When not otherwise property by charter or special law approved by voters of the election the Clerk of the Circuit Court will ordinarily be ex-officio Clerk of the Board of County Commissioners. The Florida Constitution permits the dividing of duties by general or special law between two officers, one serving as Clerk of Court and the other serving as an ex-officio Clerk of the Board of County Commissioners, Auditor, Recorder and Custodian of all County Funds."

'It is the official duty of the County Auditor to audit all claims against the county and warrants issued by the auditor are the usual evidence given a creditor that his or her claim against the county has been audited." "A clerk acting as county auditor who signs any warrant for the payment of any claims or bill or indebtedness against any county funds in excess of the expenditures allowed by law or county ordinance, is personally liable for such amount." See Fla. Stat. §129.09 (Fla. 2015).

The Clerk of the Circuit Court, County Auditor, Recorder of Deeds, Custodian of all County Funds and ex-officio Clerk of the Board of County Commissioners a Mr. Harvey Ruvin allegedly signed off on and paid all claims/warrants on behalf of Miami-Dade County Board of Commissioners willfully and knowingly that funds were to be used for a particular purpose which defrauded the government in violations of 31 U.S.C. 3729 – the False Claims Act. See Florida Constitution Art. V, Section 16 and Fla. Stat. § 129.09 (Fla. 2015).

These funds were earmarked for a particular purpose and that was to purchase seven homes between Northwest 97th Street to Northwest 116th street that were being directly affected by the I-95 Noise Abatement Wall expansion project.  The Miami-Dade County Clerk of the Board County Commissioners signed off and permitted the Miami-Dade County Parks and Recreation Department Director a Ms. Vivian Donnell Rodriquez, where Miami-Dade Commissioner Dennis Moss sponsored and Miami-Dade County Javier Soto co-sponsored seeking the Board's approval in 2006 to use earmarked funds approved by FDOT District 6 office in 2000; to redevelop the Metro Miami-Zoo located at 12400 S.W. 152nd Street, Miami, FL  33177. Ms. Vivian Donnell Rodriguez, Miami-Dade County Parks and Recreation, Director did receive the board's approval which she cancelled the Linear Parks

27

application in 2006 and stated that her reasons for canceling the Pinewood community application was that the homes were no longer for sale, which was not true.

This matter has been on-going and have resulted in all the homeowners now being harassed by Miami-Dade County in the form of higher property taxes, millage rates and the lowering of their senior citizen homeowner exemption being reduced allegedly from $25,000 senior citizen homeowner exemption to a $3,000 senior citizen homestead exemption with a millage rates of up to 25% percent in unincorporated Miami-Dade County and unlawfully incorporating municipalities and/or moving boundary line without notification to homeowners or voter's input. The Miami Dade County property appraiser's office allegedly increased the values of the Plaintiff's homes in order to make them pay higher taxes on their properties on fixed incomes.  The Plaintiffs demand that Miami-Dade County cease and desist from property tax harassment and restore all the funds each of them have paid to the county tax office over the last 20 years; since the breaching of the agreement and/or promise by Miami-Dade County Commissioners, Dr. Barbara Shuler-Carey allocated for the county to purchase all of the homes located between Northwest 97th Street to Northwest 116th Street and relocate parties at counties expense because they were being directly affected by MPO/FDOT I-95 Noise Abatement Wall expansion project.

RELIEF DEMAND

COMPENSATORY DAMAGES

The Plaintiffs want to be made whole and/or restored to their original status prior to the horrors of the I-95 interstate highway. Plaintiffs demand that Miami-Dade County compensate each of them a sum of $84,000,000.00 for the breach of agreement and/or promises made to remove the Plaintiffs from the dangerous and unsafe conditions of the I-95 expansion project they have been living with over the years 20 years which their lives have been put constantly at risk by Miami-Dade County causing much damage to the Plaintiff's financial status, hearing, mental anguish, loss of sleep, structure to property, increase in property taxes, fear of losing life, health welfare and home.

The Plaintiffs requests that the United States District Court demand that a federal FBI investigation commence into the alleged scheme of Miami-Dade County Board of County

28

Commissioners, the Miami-Dade County Parks and Recreational Department, the Metropolitan Planning Organization (MPO), the Florida Department of Transportation (FDOT) District 6 office and the Miami-Dade County Clerk of the Board of County Commissioners for the misuse and abuse of county, state and federal funds; earmarked and approved by the state and federal governments for the purposes of an I-95 Noise Abatement Wall expansion project which included building a Linear Park in the Pinewood community area, reducing the dangers of vehicle accidents, loud noises, carbon monoxide poisonous gases, cancer causing radiation agents from power-lines in neighborhood and the heavy traffic travelling on I-95 with the installation of the MPO/FDOT I-95 Noise Resistant Wall project.

In restatement the facts are it is alleged that a Miami-Dade County plan was to devised to defraud state and federal FDOT/FHWA funds by the Miami-Dade County Board of Commissioners, the Metropolitan Planning Board (MPO), the Miami-Dade County Clerk of the Board of County Commissioners and the Miami-Dade County Parks and Recreation Department for the protection of homeowners living in the county exposed to the dangers of MPO/FDOT project was not used by Miami-Dade County and others for the intended purpose.

The Plaintiffs demand that Miami-Dade County Board of Commissioners, the Miami-Dade County Clerk of the Board of Commissioners, the Miami-Dade County Parks and Recreations Department, the Metropolitan Planning Organization (MPO), and the Florida Department of Transportation (FDOT) fulfill their promises as agreed by Miami-Dade County to purchase  in 2002 the Plaintiffs homes and build a Linear Park in the Pinewood community which will now include putting Ms. Sybel W. Lee or (S.W. Lee) name on the 17 1/2 miles I-95 Noise Abatement Wall as the creator and founder.

Signed

SYBEL W. LEE, Pro Se
602 N.W. 100TH STREET
MIAMI, FL  33150
(305) 754-5073

29

MARY ANN MCMINN, Pro Se.
601 N.W. 99TH STREET
MIAMI, FL 33150
(305) 754-0126

NATHANIEL WILLIAMS, Pro Se
600 N.W. 116TH STREET
MIAMI, FL 33150
(786) 306-4609


## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that a true copy of the foregoing has been sent by U.S. Mail, hand

delivered and/or email to: Miami-Dade Clerk of the Board of County Commissioners, Harvey Ruvin is

located at Stephen P. Clark Center, 111 NW 1st Street, Suite 17-202, Miami, Florida 33128 and to all the

below defendants on the 25th day of August 2016.


Certified copies to Defendant:

HARVEY RUVIN, MIAMI-DADE COUNTY
CLERK OF THE BOARD OF
MIAMI-DADE COUNTY COMMISSIONERS, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 17-202
Miami, Florida 33128
(305) 375-4831

CARLOS A. GIMENEZ
MIAMI-DADE COUNTY MAYOR, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 2910
Miami, Florida 33128
(305) 375-5071

BARBARA J. JORDAN
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 1, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5694

DORRIN ROLLE

30

FORMER MIAMI-DADE COUNTY COMMISSIONER
DISTRICT 2, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128

JEAN MONESTIME
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 2, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4833

BARBARA SHULER-CAREY
FORMER MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
401 West Atlantic Avenue, Suite 9
Delray Beach, FL 33444
561-265-0622

STATE SENATOR OSCAR BRAYNON II
FORMER AIDE TO BARBARA SHULER-CAREY
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
18579 N.W. 27TH Avenue
Miami, FL 33056
(786) 326-3828

AUDREY M. EDMUNSON
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 3, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5393

SALLY A. HEYMAN
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 4, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5128

BRUNO BARREIRO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 5, et. al.
1454 SW 1st Street, Ste 130
Miami, Florida 33135

(305)643-8525

REBECCA SOSA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 6, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5696

XAVIER SUAREZ
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 7, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5680

DANIELLA LEVINE CAVA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 8, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5281

DENNIS MOSS
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 9, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4832

JAVIER D. SOUTO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 10, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4835

JOE MARTINEZ
FORMER MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 11, et. al.
The Reyes Law Firm, P.A.
1 Alhambra Plaza, Suite 1130
Coral Gables, Florida 33134
(786) 476-9907

32

JUAN C. ZAPATA
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 11, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5511

JOSE "PEPE" DIAZ
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 12, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4343

ESTEBAN BOVO
MIAMI-DADE COUNTY COMMISSIONER,
DISTRICT 13, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4831

CLINTON FORBES, (STE 230)
FORMER MANAGER,
METRO PLANNING ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

ALICE N. BRAVO, P.E.
DISTRICT 6 DIRECTOR OF TRANSPORTATION
SYSTEMS DEVELOPMENT, et. al.
701 NW 1st Court, Suite 1700,
Miami, FL 33136
(786) 469-5675

GARY DONN, P.E.
DISTRICT 6, PROJECT MANAGER
FLORIDA DEPARTMENT OF TRANSPORTATION
3845 N.W. 25th Street
MIAMI, FL 33142
(800) 435-2368

GUSTAVO "GUS" FELIX PEGO, P.E.
DISTRICT 6, SECRETARY
FLORIDA DEPARTMENT OF TRANSPORTATION
3845 N.W. 25th Street

33

MIAMI, FL 33142
(800) 435-2368

GOVERNOR RICK SCOTT
STATE OF FLORIDA
THE CAPITOL, et. al.
400 S. Monroe Street
Tallahassee, FL 32399-0001
(850) 488-7146

LT. GOVERNOR LOPEZ-CANTERA
STATE OF FLORIDA
THE CAPITOL, et. al.
400 S. Monroe Street
Tallahassee, FL 32399-0001
(850) 488-7146

AILEEN BOUCIE, EXECUTIVE DIRECTOR
MIAMI-DADE METROPOLITAN PLANNING
ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

JOSE LUIS-MESA, DIRECTOR
MIAMI-DADE METROPOLITAN PLANNING
ORGANIZATION, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-4507

GEORGE M. BURGESS
FORMER COUNTY MANAGER
MIAMI-DADE COUNTY GOVERNMENT, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128

ABIGAIL PRICE-WILLIAMS
COUNTY ATTORNEY
MIAMI-DADE COUNTY GOVERNMENT, et. al.
Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5151

JENNIFER GLAZER-MOON
DIRECTOR, OFFICE OF STRATEGIC BUSINESS MANAGEMENT
MIAMI-DADE COUNTY GOVERNMENT, et. al.

34

Stephen P. Clark Center
111 NW 1st Street, Suite 220
Miami, Florida 33128
(305) 375-5143

JACK KARDYS, DIRECTOR
MIAMI-DADE COUNTY PARKS
AND RECREATIONAL DEPT. et. al.
275 NW 2nd St,
Miami, FL 33128
(305) 755-7800

VIVIAN DONNELL RODRIQUEZ, DIRECTOR
MIAMI-DADE COUNTY PARKS
AND RECREATIONAL DEPT. et. al.
275 NW 2nd St,
Miami, FL 33128
(305) 379-8087

Signed

SYBEL W. LEE, Pro Se
602 N.W. 100TH STREET
MIAMI, FL  33150
(305) 754-5073

MARY ANN MCMINN, Pro Se
601 N.W. 99TH STREET
MIAMI, FL 33150
(305) 754-0126

NATHANIEL WILLIAMS, Pro Se
600 N.W. 116TH STREET
MIAMI, FL 33150
(786) 306-4609

35